UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CATHERINE P. ALFORD, ET AL.                    CIVIL ACTION


VERSUS                                         NO: 13-5457
                                               REF: 13-5703

ANADARKO E&P ONSHORE LLC, ET                   SECTION: R
AL.


**ORDER AND REASONS**

Defendants Chevron U.S.A. Inc., Chevron U.S.A. Holdings, Inc., Four Star Oil and Gas Company, and Gulf Oil Corporation (collectively "Chevron") move for a more definite statement under Federal Rule of Civil Procedure 12(e) and also move to dismiss several of plaintiffs' claims.[1] Defendants Anadarko E&P Onshore, LLC; BP America Production Company and Pan American Petroleum Corporation (collectively "BP"); Hilcorp Energy I, L.P.; and French Gulf Coast Partners also move for a more definite statement and move to dismiss, on substantially the same grounds as Chevron.[2] The Court DENIES defendants' motions for a more definite statement because plaintiffs' complaint is sufficiently detailed to allow defendants to prepare responsive pleadings. The Court GRANTS IN PART and DENIES IN PART defendants' motions to

---

[1]    R. Doc. 38.

[2]    R. Doc. 63 (Anadarko); R. Doc. 72 (BP); R. Doc. 74 (Hilcorp); R. Doc. 145 (French).

dismiss because plaintiffs have failed to plausibly allege necessary factual elements of certain claims. Plaintiffs will be allowed an opportunity to amend their complaint.

## I.    BACKGROUND

## A.  Plaintiffs' Factual Allegations

Plaintiffs allege that they own and/or use certain property in Township 21 South, Range 28 East, Plaquemines Parish, Louisiana, in the Bastian Bay Field.[3] They allege that defendants engaged in oil and gas exploration and production activities that caused harm to that property.[4] The Louisiana Supreme Court has called this type of lawsuit "legacy litigation" because it "arise[s] from [oilfield] operations conducted many decades ago" that left "an unwanted 'legacy' in the form of actual or alleged contamination." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 238 n.1 (La. 2010) (citing Loulan Pitre, Jr., *"Legacy Litigation" and Act 312 of 2006*, 20 Tul. Envt. L.J. 347, 348 (2007)).

Plaintiffs have sued nine entities: Anadarko E&P Onshore, LLC; BP American Production Company; Chevron U.S.A. Inc.; Chevron U.S.A. Holdings, Inc.; Four Star Oil and Gas Company; French Gulf Coast Partners; Gulf Oil Corporation; Hilcorp Energy I, L.P.; and Pan American Petroleum Corporation. Anadarko is allegedly the

---

[3]    *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 48.

[4]    *Id.* at 47.

successor in interest to RME Petroleum Company and Union Pacific Resources Company; BP America, the successor in interest to Pan American; Chevron U.S.A., the successor in interest to Gulf Oil Corporation, Tidewater Oil Company, Getty Oil Company, TMR Company, TMRI Holdings, Inc., and Chevron U.S.A. Holdings; Chevron U.S.A. Holdings, the successor in interest to Texaco Producing Inc.; and Four Star, the successor in interest to Getty Oil.[5] Plaintiffs allege that defendants, or companies to which defendants are successors in interest, "conducted, directed, controlled or participated in various oil and gas exploration and production activities" on the property in their capacity "as operators, and/or working interest owners, and/or mineral or surface lessees, and/or mineral surface lease assignees, and/or mineral sublessess, and/or servitude, executive interest or other mineral interest owners, and/or personal or predial servitude owners."[6] More specifically, defendants allegedly constructed and operated "various oil and gas facilities, including but not limited to, pits, wells, sumps, pipelines, flowlines, tank batteries, wellheads, measuring facilities, separators, and injection facilities" on plaintiffs' property over the past several years.[7] These facilities have allegedly discharged

---

[5]     *Id.* at 49.

[6]     *Id.* at 50.

[7]     *Id.*

3

hazardous substances into plaintiffs' property.[8] Plaintiffs also allege that defendants have disposed of oilfield wastes in "unlined earthen pits" on or near the property.[9] According to the complaint, waste in unlined pits, which contains numerous toxic and hazardous substances, seeps into the surrounding area, contaminating "both surface and subsurface soils and waters."[10] The resulting pollution has allegedly "permanently damaged the drinking water and other aquifers" under plaintiffs' property.[11]

The complaint alleges that "[d]efendants knew or should have known that their day to day operations in the [Bastian Bay[12]] Field would cause the soil, surface waters and groundwater of plaintiffs' property to be contaminated" with hazardous substances.[13] But, rather than removing the substances, defendants "chose to conceal and cover up their contamination."[14] Specifically, defendants allegedly "bur[ied], hid[], or actively

---

[8]    *Id.* at 51.

[9]    *Id.*

[10]   *Id.*

[11]   *Id.* at 52.

[12]   The complaint identifies the field as the "Lawson Field," but the Court assumes that the plaintiffs intended to refer to the Bastian Bay Field, where their property is allegedly located. *See id.* at 48 (alleging that plaintiffs "own and/or use" property in the Bastian Bay Field).

[13]   *Id.* at 52.

[14]   *Id.*

4

conceal[ed] pollution" and failed to inform plaintiffs of the potential harm the pollution could cause to plaintiffs' property.[15] Plaintiffs claim that, because of this alleged "fraud and misrepresentation," they did not have actual or constructive knowledge of defendants' pollution until less than a year before they filed this lawsuit.[16]

Plaintiffs bring a host of claims based on the harms they allegedly suffered from defendants' misconduct. They allege that defendants committed negligence under Louisiana Civil Code article 2315;[17] a continuing tort and continuing trespass;[18] breach of express contract;[19] breach of implied obligations under the Louisiana Civil and Mineral Codes;[20] violations of Civil Code article 667;[21] and violations of Civil Code articles 2317 and 2322, which concern premises liability.[22] Plaintiffs also allege that defendants are liable for punitive damages for wanton or

---

[15]  *Id.* at 53.

[16]  *Id.; see also id.* ("[D]efendants have engaged in acts that effectually have prevented plaintiffs from availing themselves of the causes of action alleged herein.").

[17]  *Id.*

[18]  *Id.* at 54.

[19]  *Id.* at 54-55.

[20]  *Id.* at 56-60.

[21]  *Id.* at 55, 59.

[22]  *Id.* at 55.

reckless conduct under former Civil Code article 2315.3[23] and civil fruits of trespass under Civil Code article 486.[24] Finally, plaintiffs claim that they are entitled to damages for unjust enrichment if they have no other adequate remedy at law.[25]

Plaintiffs have attached to their complaint photographs of the property at issue[26] and several documents relating to the chain of title to the property.[27] These include the following documents:

- an oil and gas lease on the subject property in the name of Tidewater Associated Oil Company, dated May 1, 1954;[28]

- various conveyances of the interests encompassed within that lease, which reflect that French, Union Pacific, Chevron U.S.A. Inc., Texaco, Getty Oil, RME Petroleum,

---

[23]    *Id.* at 58-59.

[24]    *Id.* at 59.

[25]    *Id.* at 60. The Court does not interpret plaintiffs' complaint to assert a standalone claim under La. Rev. Stat. § 30:29. That statute is "procedural, rather than substantive, and does not create a right of action in favor of landowners." *Wagoner v. Chevron U.S.A. Inc.*, 55 So. 3d 12, 26 (La. Ct. App. 2010). Section 30:29 merely specifies the procedures applicable to lawsuits alleging environmental damage; the substantive law is supplied by the Louisiana Civil and Mineral Codes and other applicable statutory law and jurisprudence. *See* La. Rev. Stat. § 30:29(H).

[26]    *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 69-70.

[27]    *Id.* at 71-226.

[28]    *Id.* at 204.

and Hilcorp have held interests in the subject
property;[29]

- a 1997 grant of leave to Union Pacific to operate a
  well on the property;[30]

- a 2005 grant of leave to Hilcorp to operate a well on
  the property;[31]

- documentation of the merger between Chevron U.S.A.,
  Inc. and Gulf Oil;[32]

- documentation of the merger between Tidewater and Getty
  Oil;[33]

- documentation reflecting that Union Pacific changed its
  name to RME Petroleum in 2000;[34]

- a utilization agreement concerning the subject property
  executed by Tenneco, Inc., Getty Oil, Pan American,
  Phillips Petroleum Company, Callery Properties, Inc.,
  and Henderson Oil Company, Inc.;[35] and

- a utilization agreement concerning the subject property
  executed by Pan American, Tidewater, and Gulf Oil.[36]

---

[29]   *Id.* at 86-139, 212-222.

[30]   *Id.* at 71-85.

[31]   *Id.* at 209-11.

[32]   *Id.* at 140.

[33]   *Id.* at 195-96.

[34]   *Id.* at 223-26.

[35]   *Id.* at 141-93.

[36]   *Id.* at 197-203. Pages 205-07 of the state court record
are unreadable.

Although plaintiffs repeatedly refer to "leases" and "servitude agreements" (in the plural) in their complaint,[37] the only such agreement attached to the complaint is the 1954 lease. Because plaintiffs have alleged no facts plausibly suggesting that there are any other leases or servitudes applicable to the property, the Court will limit its focus in this order to the 1954 lease granted to Tidewater.[38]

Plaintiffs have also attached the Operator History of the property to the complaint.[39] That document reflects that Tidewater, Getty Oil, and Tenneco, Inc. have operated four different wells on plaintiffs' property.[40] Operations on well number 70872 were originally permitted on June 17, 1958, and concluded on August 2, 1986, when the well was plugged and abandoned.[41] Operations on well number 73091 were originally permitted on December 4, 1958, and concluded on August 2, 1986,

---

[37]   *See, e.g.*, *id.* at 55 ("Defendants are liable for the tortious breach of contracts sued upon in this petition. These contracts may include mineral and surface leases, servitude agreements, assignments, mineral and surface subleases, right of way agreements, joint operating agreements, unit agreements, working interest agreements, use agreements, farmout agreements, farming agreements, and unit or pooling agreements.").

[38]   *Id.* at 204.

[39]   *See id.* at 24.

[40]   *Id.* at 32-33.

[41]   *Id.* at 32.

8

when the well was plugged and abandoned.[42] Operations on well
number 88536 were originally permitted on January 22, 1962, and
concluded on September 18, 1976, when the well was plugged and
abandoned.[43] Operations on well number 91102 were permitted on
July 9, 1962, and concluded on September 18, 1976, when the well
was plugged and abandoned.[44]

## B.   Procedural History

Plaintiffs filed this lawsuit on May 3, 2013 in Louisiana
state court.[45] They amended their petition on July 30 to add an
additional plaintiff, River Realty, L.L.C., and to include the
Operator History of the wells on their property.[46]

Defendants removed the suit to this Court on August 29,
2013.[47] On September 12, the Court consolidated this action with
Civil Action No. 13-5457, *Alford et al. v. Chevron U.S.A., Inc.,
et al.*[48] Defendants in this case, No. 13-5464, now move for a

---

[42]   *Id.*

[43]   *Id.*

[44]   *Id.* at 33.

[45]   *Id.* at 47.

[46]   *Id.* at 23-46.

[47]   *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No.
2:13-cv-05703, R. Doc. 1.

[48]   R. Doc. 35. The Court remanded the lead case, No. 13-
5457, to Louisiana state court on January 6, 2014. R. Doc. 158.

more definite statement under Rule 12(e) and move to dismiss under Rule 12(b)(6).

## II.  MOTIONS FOR A MORE DEFINITE STATEMENT

### A.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8, a complaint need not provide "detailed factual allegations," but must simply provide the plaintiff's grounds for entitlement to relief. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A district court will grant a party's motion for a more definite statement pursuant to Rule 12(e) when the pleading at issue "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion must state the defects in the pleading and the details desired. *See id.*

Given the liberal pleading standard set forth in Rule 8(a), courts do not favor Rule 12(e) motions. *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, Civil Action Nos. 10-1333, 10-2296, 2012 WL 2087438, at *6 (E.D. La. June 8, 2012) (following *Mitchell*); *EEOC v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. 2012); *see also* 5C Charles Allen Wright, et al., *Federal Practice and Procedure* § 1377 (3d ed. 2010) ("[A]s a result of

10

the generally disfavored status of these motions, the proportion of Rule 12(e) requests granted by the district courts appears to have remained quite low."). Motions for a more definite statement are "not to be used to assist in getting the facts in preparation for trial," because "[o]ther rules relating to discovery, interrogatories and the like exist for this purpose." *Mitchell*, 269 F.2d at 132; *see also Coleman v. H.C. Price Co.*, Civil Action No. 11-2937, 2012 WL 1118775, at *6 (E.D. La. Apr. 3, 2012) ("The availability of extensive discovery is another factor in the disfavored status of the motion for more definite statement. . . . When a defendant needs additional information to prepare for trial, discovery is the proper procedure instead of a Rule 12(e) motion."). At the same time, the Supreme Court has noted that "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

## B.  Discussion

Chevron argues that plaintiffs must provide a more definite statement because they have not sufficiently articulated "how the property became contaminated, the extent and location of any contamination, and what specific facilities were operated by Chevron that allegedly caused the contamination."[49] Chevron also

---

[49]     R. Doc. 38-1 at 9.

complains that plaintiffs improperly lump all of the defendants together, alleging that each defendant is liable for all of the wrongdoing outlined in the complaint, rather than stating which defendant is responsible for which acts of contamination. Finally, Chevron notes that plaintiffs have not alleged "when and how they acquired their interest in the property," or when specific leaks, spills, or other harmful discharges occurred.[50] Chevron specifically requests that plaintiffs provide more details concerning their claim for punitive damages under Civil Code article 2315.3 and their claims for land loss, subsidence and backfilling of canals. The other defendants make essentially the same arguments as Chevron in contending that plaintiffs must provide a more definite statement.

The Court finds that plaintiffs' complaint is sufficiently detailed to allow defendants to prepare a responsive pleading. In the complaint, plaintiffs have identified the property at issue by township and range, and the operational area at issue as the Bastian Bay Field. They have identified the wells operated on that property by operator and serial number. Plaintiffs allege that this property was contaminated by pollution that resulted from defendants' activities in constructing and operating oil and gas exploration and production facilities, and from defendants' storage of the resulting waste in unlined earthen pits.

---

[50]   *Id.*

Plaintiffs have explained why the materials discharged on their property are harmful, and they have given specific examples of ways in which the property has been damaged.[51] Finally, plaintiffs have set forth the legal theories upon which they rely, and the specific remedies sought. Several courts in this circuit have denied motions for a more definite statement in oilfield legacy cases when the plaintiffs included analogous details in their complaint. *See Constance v. Austral Oil Exploration Co.*, Nos. 2:12-CV-1252, 2:12-CV-1253, 2013 WL 6578178, at *4 (W.D. La. Dec. 13, 2013) (finding complaint in oilfield legacy suit sufficient because it listed "the identities of all parties . . . to the case, . . . detailed descriptions of the property at issue . . .[,] the legal theories under which recovery is sought, . . . the types of damages sought," and "specific serial numbers of wells worked by specific defendants"); *Martin v. Tesoro Corp.*, No. 2:11-CV-1413, 2012 WL 1866841, at *2 (W.D. La. May 21, 2012)**;** *Gaspard One, L.L.C. v. BP Am. Prod. Co.*, Civil Action No. 07-1551, 2008 WL 863987, at *3 (W.D. La. Mar. 31, 2008); *Sweet Lake Land & Oil Co. v. Exxon Mobil Corp.*, No. 2:09-CV-01100, 2009 WL 4716090, at *3 (W.D. La. Dec. 9, 2009); *Brownell Land Co., L.L.C. v. Ranger Oil Co.*, No. Civ.A. 05-0142, 2006 WL 278255, at *1-2 (E.D. La. Feb. 2, 2006).

---

[51]     *See, e.g.*, *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 52 (alleging that defendants' pollution has "permanently damaged the drinking water and other aquifers underlying plaintiffs' property").

13

The additional information that defendants seek is properly addressed to discovery. *See Mitchell*, 269 F.2d at 132; *Gaspard One*, 2008 WL 863987, at *3.

## III. MOTIONS TO DISMISS

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of

each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## B. Discussion

### 1. *Individual Conduct*

BP and Anadarko argue that the allegations against them should be dismissed because plaintiffs have alleged no facts suggesting that they engaged in any actual conduct on the property in question.[52] Plaintiffs concede in their opposition that Anadarko and BP did not conduct any operations on or near plaintiffs' property and that they have not alleged in the complaint that those defendants engaged in any specific conduct.[53] In fact, the Operator History attached to plaintiff's complaint suggests that the Chevron entities are the only defendants that actually conducted oil and gas exploration and production activities on plaintiffs' property.[54] Plaintiffs have

---

[52]   *See* R. Doc. 63-1 at 2; R. Doc. 72-2 at 4.

[53]   R. Doc. 76 at 9-10.

[54]   *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 32-33. The only entities listed as operators on plaintiffs' property are Tidewater, Getty Oil, and Tenneco. *Id.* Tidewater and Getty Oil are allegedly predecessors in interest to the Chevron defendants, and Tenneco is not named in the complaint.

pled no facts plausibly suggesting that the other defendants engaged in any conduct that could have given rise to plaintiffs' alleged injuries. The conclusory and overly general allegations in the complaint that "defendants" engaged in activities that damaged plaintiffs' property are insufficient. *See Iqbal*, 556 U.S. at 678 (Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusations," and a complaint containing "'naked assertion[s]' devoid of 'further factual enhancement'" must be dismissed (quoting *Twombly*, 550 U.S. at 557) (alteration in original)); *cf. Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1219 (5th Cir. 1989) (finding complaint defective because it contained "numerous unclarified generalities and conclusory allegations," "frequent . . . alternative and/or allegations," and "abundant wholly general cross-referencing").

Plaintiffs note, however, that the documents attached to the complaint reflect that Pan American, to which BP is alleged to be a successor in interest, held certain interests in the lease in question.[55] Those documents also indicate that RME Petroleum, allegedly a predecessor in interest to Anadarko, held leasehold

---

[55]   *See id.* at 141-93, 197-203 (reflecting that Pan American was a party to unitization agreements concerning the subject property).

interests in plaintiffs' property,[56] as did French,[57] Hilcorp,[58] and the Chevron entities.[59] Plaintiffs argue that defendants' leasehold interests in plaintiffs' property conferred on defendants "[t]he obligation to restore [the] property . . ., either explicitly or impliedly."[60]

Plaintiffs are correct that defendants have certain obligations to plaintiffs by virtue of the mineral lease referred to in the complaint and attached documents. Therefore, some of plaintiffs' claims against Anadarko, BP, Hilcorp, and French are potentially viable, notwithstanding the lack of allegations that those defendants engaged in actual conduct on or near plaintiffs' property. For many of plaintiffs' claims, though, the lack of allegations that those defendants engaged in any affirmative conduct on or near the property is fatal. These issues are discussed in greater detail below.

2.  *Prematurity*

Defendants argue that plaintiffs' claims for restoration of their property are premature to the extent that the lease in question is still in effect. Defendants are correct, at least in

---

[56]    *See id.* at 212-22.

[57]    *See id.* at 86-113.

[58]    *See id.* at 209-22.

[59]    *See id.* at 114-34.

[60]    R. Doc. 76 at 10.

part. Under Civil Code article 2683(3), a lessee is bound "[t]o return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear." This obligation arises "only at the end of the lease." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 256 (La. 2010). Plaintiffs brought suit "under the mineral and surface leases and use agreements that *apply* to the property at issue."[61] Plaintiffs' use of the present tense suggests that the lease in question is still extant, and nowhere do they allege that the lease has expired. Accordingly, plaintiffs are precluded from bringing claims for restoration under article 2683(3).

Plaintiffs correctly note that other obligations imposed on lessees under Civil Code articles 2683, 2686, 2688, and 2692 and articles 11 and 122 of the Mineral Code "continue throughout the term of the lease," such that "a lessor need not wait until the end of the lease to sue a lessee for damages to his property." *Marin*, 48 So.3d at 256. Thus, plaintiffs' claims against defendants under those articles are not foreclosed on the grounds that the lease has not expired. *See, e.g.*, *Hardee v. Atl. Richfield*, 926 So. 2d 736, 741-42 (La. Ct. App. 2006) (citing *Dore Energy Corp. v. Carter-Langham, Inc.*, 901 So. 2d 1238 (La. Ct. App. 2005)).

---

[61]    *Alford et al. v. Chevron U.S.A. et al.*, No. 2:13-cv-5703, R. Doc. 1-3 at 56 (emphasis added).

BP also argues that "plaintiffs' claims are premature to the extent that any applicable leases relating to the subject property . . . contain notice and cure provisions."[62] But, even assuming that BP is correct, BP has pointed to nothing in the complaint or attached documentation suggesting that the lease in question contains a notice and cure provision. Accordingly, the Court does not find plaintiffs' claims premature on this basis. Cf. *Hardee*, 926 So. 2d at 739 (overruling defendant's exception of prematurity because the defendants had "introduced no evidence in support of their exception" and because plaintiff's complaint did not indicate that the lawsuit was premature).

    3.    *Fraud*

Plaintiffs have alleged that defendants committed "fraud and misrepresentation" by hiding the pollution that their oil and gas exploration and production activities produced and by failing to inform plaintiffs of the potential harm that the pollution could cause.[63] In other words, plaintiffs allege that defendants fraudulently concealed their unlawful conduct, thereby "prevent[ing] plaintiffs from availing themselves of the causes of action alleged [in the complaint]."[64] Cf. *Marin*, 48 So. 2d at

---

[62]    R. Doc. 72-2 at 5.

[63]    *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-5703, R. Doc. 1-3 at 53.

[64]    *Id.*

251-52 (if defendant engages in fraudulent acts or other "ill practices" that "tend to hinder, impede, or prevent the plaintiff from asserting his cause of action," doctrine of *contra non valentem* will apply to prevent prescription from running); *Whitnell v. Silverman*, 592 So. 2d 429, 431 (La. Ct. App. 1991) (same). Defendants contend that plaintiffs' fraud allegations are too vague and improperly fail to differentiate among the various defendants.

Defendants are correct. Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud 'to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)). Allegations of fraudulent concealment are subject to the requirements of Rule 9(b). *See Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970-71 (5th Cir. 1981); *In re Pool Prods. Dist. Mkt. Antitrust Litig.*, MDL No. 2328, --- F. Supp. 2d ----, 2013 WL 6670020, at *21 (E.D. La. Dec. 18, 2013).

Plaintiffs have failed to satisfy this strict pleading standard. They allege generally that "defendants (or their

20

representatives)" engaged in "acts of fraud and misrepresentation" including "burying, hiding or actively concealing pollution" and failing to inform plaintiffs of the deleterious consequences that could result from that pollution.[65] Courts in this circuit have found virtually identical allegations of fraud to be deficient under the Fifth Circuit's interpretation of Rule 9(b) because these allegations fail to identify when the allegedly fraudulent conduct took place and do not "distinguish among . . . defendant[s] . . . [or] set forth each defendant's responsibility for the allegedly fraudulent activities." *Martin*, 2012 WL 1866841, at *4; *accord Constance*, 2013 WL 6578178, at *6. Group pleading is not permitted under Rule 9(b); instead, the plaintiff must plead specific facts describing the fraud allegedly committed by each defendant. *Lang v. DirecTV*, 735 F. Supp. 2d 421, 437 (E.D. La. 2010) (complaint alleging fraud may not group the defendants together, but must plead specific facts that satisfy the Rule 9(b) requirements as to each defendant); *see also In re Pool Prods.*, 2013 WL 6670020, at *23. Plaintiffs have failed to do so here.

Plaintiffs contend that their allegations of concealment are adequate "because the defendants' oil and gas exploration and production activities are peculiarly within the defendants'

---

[65]   *Id.*

knowledge."[66] The Court is not persuaded. Although it is true that fraud may be pled on information and belief when the facts constituting the fraud are peculiarly within the defendants' knowledge, the plaintiff must still "set[] forth the factual basis for his belief." *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999), *overruled on other grounds by United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009). Relaxation of the Rule 9(b) requirements "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Tuchman v. OSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Here, plaintiffs have alleged no facts, even on information and belief, describing specific acts of fraud committed by specific defendants. That distinguishes this case from *Guste v. Shell Oil Co.*, 161 F.R.D. 329 (E.D. La. 1995), on which plaintiffs rely. In *Guste*, the plaintiffs alleged that Shell undertook certain long-term environmental studies, but failed to inform the plaintiffs of the results, which indicated that pollution caused by Shell "had ruined their property and destroyed its economic and social value." *Id.* at 332. These allegations were sufficient under Rule 9(b), because plaintiffs alleged that a specific defendant failed

---

[66]    R. Doc. 76 at 25.

to inform the plaintiffs of a specific series of test results relating to pollution on the plaintiffs' property. Here, in contrast, plaintiffs' complaint is bereft of any such specificity.

Plaintiffs also contend in their response that the "basis" for their concealment allegations is Louisiana Civil Code article 2688, which provides that a lessee must notify his lessor if and when the property leased is damaged or requires repair. But this contention is not accurate; plaintiffs' complaint alleges fraudulent concealment in an effort to toll the statute of limitations, and then *separately* alleges that defendants violated article 2688 by failing "to notify plaintiffs of the contamination on their property."[67] And, in any event, "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *see also Martin*, 2012 WL 1866841, at *3 (dismissing fraud allegations "offered to overcome a potential defense of prescription" because they had not been pled with sufficient particularity). In other words, plaintiffs cannot do an end-run around the requirements of Rule 9(b) by giving their fraud claim a different label. Regardless of the "basis" of plaintiffs' allegations of

---

[67]     *See Alford et al. v. Chevron U.S.A. et al.*, No. 2:13-cv-5703, R. Doc. 1-3 at 53, 64.

fraudulent conduct, those allegations must satisfy Rule 9(b), and here, they do not.

### 4. *Claims for Breach of Express Lease Terms*

Plaintiffs have alleged that defendants' actions in polluting plaintiffs' land and failing to restore that land to its original condition constitute a breach of the express provisions of the mineral lease applicable to plaintiffs' property.[68] But plaintiffs concede in their opposition that "[t]he mineral lease at issue in this case contains no express language that addresses the issue of restoration."[69] Plaintiffs have pointed to no other provision of the lease, or of any other agreement, that defendants breached through the conduct alleged in the complaint. Accordingly, the Court finds that plaintiffs have failed to state a claim for breach of an express contractual provision.

### 5. *Claims for Breach of Implied Obligations under the 1954 Lease*

Plaintiffs also allege that defendants' actions in polluting plaintiffs' land and failing to restore that land to its original condition constitute a breach of defendants' implied obligations as lessees under the Louisiana Civil and Mineral Codes.

---

[68]   *See id.* at 58 ("Defendants specifically allege that defendants have violated the express . . . obligations of surface leases that apply to the property subject to this suit.").

[69]   R. Doc. 76 at 25-26.

a.   *Overview of the Applicable Codal Provisions*

Plaintiffs have alleged violations of the following codal provisions concerning implied obligations of lessees: Civil Code articles 2683, 2686, 2688, and 2692, which regulate the obligations of the lessor and the lessee; Mineral Code article 11, which describes the correlative rights of landowners and owners of mineral rights; and Mineral Code article 122, which concerns a mineral lessee's obligation to act as a reasonably prudent operator.

Article 2683 provides that a lessee

is bound:
(1) To pay the rent in accordance with the agreed terms;
(2) To use the thing as a prudent administrator and in accordance with the purpose for which it was leased; and
(3) To return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter.

The qualifier "except for normal wear and tear" is important, because "[t]he lessor may be considered to have given his assent to the 'wear and tear' normally involved in exercising the rights granted." *Terrebonne Parish Sch. Bd. v. Castex Energy, Inc.*, 893 So. 2d 789, 800 (La. 2005). Thus, for example, a lessor who leases his land to a lessee for purposes of drilling for oil may not recover "for damages which are inflicted without negligence upon the lessor's property in the course of necessary drilling operations." *Id.* at 799 (quoting *Rohner v. Austrl. Oil Co.*, 104 So. 2d 253, 255 (La. Ct. App. 1958)). Absent an express provision

25

in the mineral lease requiring the lessee to restore the property to its original condition, the lessee need restore the surface to its original condition only if "there is evidence of unreasonable or excessive use." *Id.* at 792.

Articles 2686, 2688, and 2692 expound upon the "prudent administrator" standard set forth in article 2683. Article 2686 provides that a lessor "may obtain injunctive relief, dissolution of the lease, and any damages he may have sustained" if the lessee uses the leased property "for a purpose other than that for which it was leased or in any manner that may cause damage" to the property. Article 2688 requires the lessee to notify the lessor "without delay" when the leased property is damaged or requires repair. Finally, article 2692 provides that

> [t]he lessee is bound to repair damage to the thing
> caused by his fault or that of persons who, with his
> consent, are on the premises or use the thing, and to
> repair any deterioration resulting from his or their use
> to the extent it exceeds the normal or agreed use of the
> thing.

Mineral Code article 11, which states the "foundational duty of parties in a case of mineral rights," *Walton v. Burns*, --- So. 3d ---, 2013 WL 163739, at *9-10 (La. Ct. App. Jan. 16, 2013), provides generally that "[t]he owner of land burdened by a mineral right and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other." La. Rev. Stat. § 31:11. Article 122 of the Mineral Code

26

defines this obligation more specifically in the context of
mineral lessees:

> A mineral lessee is not under a fiduciary obligation to
> his lessor, but he is bound to perform the contract in
> good faith and to develop and operate the property leased
> as a reasonably prudent operator for the mutual benefit
> of himself and his lessor. Parties may stipulate what
> shall constitute reasonably prudent conduct on the part
> of the lessee.

La. Rev. Stat. § 31:122. The Louisiana Supreme Court has held
that Mineral Code article 122 "simply adopts the good
administrator standard of La. Civ. Code art. [2683[70]], applicable
to all leases, to the specific context of a mineral lease."
*Castex*, 893 So. 2d at 797; *see also State v. La. Land &
Exploration Co.*, 110 So. 3d 1038, 1045 & n.9 (La. 2013) ("Mineral
leases are construed as leases generally, and the provisions of
the Civil Code applicable to ordinary leases, when pertinent, are
applied to mineral leases." (quoting *Caskey v. Kelly Oil Co.*, 737
So. 2d 1257, 1262 (La. 1999))).[71]

The obligations imposed upon mineral lessees by the Civil
and Mineral Codes are indivisible. *See Sweet Lake Land & Oil Co.*

---

[70]     At the time of the *Castex* opinion, Civil Code article
2710 governed the obligations of the lessee. The provision was
moved to article 2683 as part of the 2004 revisions to the Civil
Code. *See* La. Civ. Code art. 2683 cmt.

[71]     The Mineral Code explicitly provides that its
provisions "are supplementary to those of the Louisiana Civil
Code and are applicable specifically to the subject matter of
mineral law." La. Rev. Stat. § 31:2. That is, the Civil Code
still applies to mineral law cases, so long as its provisions do
not conflict with the provisions of the Mineral Code. *See id.*

27

*LLC v. Exxon Mobil Corp.*, No. 2:09 CV 1100, 2011 WL 5825791, at
*5 (W.D. La. Nov. 16, 2011) (obligation to restore leased
premises under the Civil and Mineral codes is indivisible because
"[p]roperty is either restored or it is not"); *Questar*
*Exploration & Prod. Co. v. Woodard Villa, Inc.*, 123 So. 3d 734,
738 & n.11 (La. Ct. App. 2013) (noting that mineral leases are
"presumptively indivisible"); *Matthews v. Goodrich Oil Co.*, 471
So. 2d 938, 944 (La. Ct. App. 1985) ("[T]he concept of the
indivisible nature of mineral leases and the effects thereof . .
. have existed in Louisiana jurisprudence for a number of
years."); *Nunley v. Shell Oil Co.*, 76 So. 2d 111, 112-13 (La. Ct.
App. 1954) ("[T]he Supreme Court of [Louisiana] has established
the general rule that an oil and gas lease is an indivisible
obligation . . . ."); *see also* La. Civ. Code art. 1815; *Hunter v.*
*Shell Oil Co.*, 31 So. 2d 10, 902 (La. 1947) ("The law is well
settled that the lessee's obligation to drill a well is
indivisible in its nature."). When an obligation is indivisible,
all obligors are solidarily liable for the full performance of
the obligation. La. Civ. Code art. 1818; *Sweet Lake*, 2011 WL
5825791, at *5. All of the named defendants either have held
leasehold interests in the property in question, or are
successors in interest to entities who have held such interests.
*See supra* Section III.B.1. Accordingly, all defendants are liable
to plaintiffs if any of the lessees to the property have breached
their codal obligations to plaintiffs. *See* La. Rev. Stat.

28

§ 31:128 ("To the extent of the interest acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations."); *Sweet Lake*, 2011 WL 5825791, at *5-7.

    *b.   Civil Code Article 2683 and Mineral Code Articles 11 and 122*

    Plaintiffs have not alleged that defendants failed to pay any applicable rent. Accordingly, plaintiffs have no claim under Civil Code article 2683(1). Moreover, as explained above, plaintiffs' claims against defendants for restoration under Civil Code article 2683(3) are premature because plaintiffs' complaint suggests that the applicable lease is still in effect.

    Civil Code article 2683(2) and Mineral Code articles 11 and 122, in essence, collectively require that mineral lessees use the leased property as a "prudent administrator." *See La. Land & Exploration Co.*, 110 So. 3d at 1045-47. Plaintiffs have plausibly alleged that defendants violated this codal duty, for the following reasons.

    The complaint alleges that the Chevron entities conducted oil and gas production and exploration activities on the property during the period of the lease. The Operator History attached to plaintiffs' complaint bolsters this allegation. It shows that Tidewater and Getty Oil, allegedly predecessors in interest to

Chevron U.S.A., Inc.,[72] operated four wells in the Bastian Bay Field in the 1960s and 1970s.[73] The complaint alleges sufficient facts to plausibly suggest that Tidewater and Getty Oil negligently conducted those operations and improperly stored the resulting waste, thereby causing harm to plaintiffs' property.[74] Therefore, plaintiffs have plausibly alleged that Chevron, through its predecessors in interest, violated its codal duties as a lessee to act as a "prudent administrator" and to refrain from using the property unreasonably and excessively. *Cf. Marin*, 48 So. 2d at 242 (noting the trial court's finding that defendant's pollution of plaintiffs' property through oil and gas exploration and production activities "was 'unreasonable and constitutes negligent operations by the lessee,' resulting in breach of contract"). Defendants, as co-lessees of the property, are thus potentially liable to plaintiffs for that violation.

---

[72]    *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 49.

[73]    *Id.* at 32-33.

[74]    *See, e.g.*, *id.* at 52 ("Defendants knew or should have known that their day to day operations in the [Bastian Bay] Field would cause the soil, surface waters and groundwater of plaintiffs' property to be contaminated with [toxic] substances . . . . Defendants' pollution has now permanently damaged the drinking water and other aquifers underlying the petitioners' property."); *id.* at 56 ("Defendants' conduct of their oil and gas exploration and production activities and the associated discharge, disposal or storage of oil field waste on plaintiffs' property have created a continuing, ongoing and damaging nuisance to plaintiffs and plaintiffs' property.").

*c.   Civil Code Article 2686*

The analysis of plaintiffs' article 2686 claim is similar to that of their article 2683(2) claim. Plaintiffs have plausibly alleged that Chevron used the property "in a manner that may cause damage to" it, so they have stated a viable claim against defendants for violation of their duties under article 2686.

*d.   Civil Code Article 2688*

Article 2688 is not applicable to this case because it was enacted in 2005, many years after the lease in question was executed. "[L]aws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written." *Green v. New Orleans Saints*, 781 So. 2d 1199, 1203 (La. 2000) (citing *Bd. of Comm'rs of Orleans Levee Dist. v. Dep't of Natural Res.*, 496 So. 2d 281, 294 (La. 1986)). Conversely, a statute "not in effect at the time of contracting . . . cannot be retroactively applied to alter the obligations of [a] contract, even though the act giving rise to the obligation occurs after the effective date of the statute." *Block v. Reliance Ins. Co.*, 433 So. 2d 1040, 1044 (La. 1983) (citing La. Const. art. 1, § 23); *accord State Dep't of Transp. & Dev. v. Berry*, 609 So. 2d 1100, 1102 (La. Ct. App. 1992). Article 2688, which was enacted after the 1954 lease was executed, "cannot be retroactively applied to alter the obligations of that contract." *Block*, 433 So. 2d at 1044. Under the law as it existed in 1954,

31

the lessees of plaintiffs' property had no duty analogous to that imposed by article 2688, and consequently those lessees have no such duty today. Plaintiffs' claim under article 2688 thus fails.

e.   *Civil Code Article 2692*

Plaintiffs have plausibly alleged that defendants violated their duty as lessees under article 2692. The complaint sufficiently alleges facts suggesting that Chevron negligently conducted oil and gas exploration and production operations on plaintiffs' property and improperly stored the resulting waste, which would trigger defendants' duty as co-lessees "to repair any deterioration resulting from [the lessee's] use to the extent it exceeds the normal or agreed use" of the property. La. Civ. Code art. 2692; *cf. Marin*, 48 So. 2d at 242.

6.   *Claims for Breach of Implied Obligations of Mineral Servitude Holders*

Plaintiffs also allege that defendants' actions in polluting plaintiffs' land and failing to restore that land to its original condition constitute a breach of defendants' implied obligations as mineral servitude holders under the Civil and Mineral Codes.

a.   *Overview of the Applicable Codal Provisions*

Plaintiffs have alleged violations of the following codal provisions concerning implied obligations of servitude holders: Louisiana Civil Code articles 576 and 577, which regulate personal servitudes of use; Mineral Code article 11, which

32

describes the correlative rights of landowners and owners of mineral rights; and Mineral Code article 22, which concerns the rights and obligations of a mineral servitude owner.

Civil Code articles 576 and 577 apply to personal servitudes of use. *See* La. Civ. Code art. 645. Under article 576, the holder of a personal servitude "is answerable for losses resulting from his fraud, default, or neglect," and under article 577, he is also "responsible for ordinary maintenance and repairs for keeping the property subject to the [servitude] in good order."

As stated above, Mineral Code article 11 provides that "[t]he owner of land burdened by a mineral right and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other." La. Rev. Stat. § 31:11. Mineral Code article 22 defines this obligation more specifically in the context of mineral servitudes, providing that "[t]he owner of a mineral servitude . . . is entitled to use only so much of the land as is reasonably necessary to conduct his operations," and "is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time." La. Rev. Stat. § 31:22.

b.  *Defendants' Obligations as Servitude Holders*

Plaintiffs never allege in their complaint that any of the defendants held a mineral servitude on the property in question, and none of the documents attached to plaintiffs' complaint

33

suggest that any defendant ever owned such an interest. Thus, plaintiffs cannot state a claim against any of the defendants under the codal provisions governing the obligations of servitude holders. *See, e.g.*, *Walton*, 2013 WL 163739, at *9-11 (noting that Mineral Code article 22, entitled "Certain rights and obligations of the mineral servitude owner," is, by its express terms, applicable only to mineral servitude holders).

7. *Claims for Damages for Land Loss, Subsidence, and the Cost of Backfilling of Canals and Other Excavations*

In their prayer for relief, plaintiffs request "damages for land loss, subsidence, and the cost of backfilling of canals and other excavations."[75] But plaintiffs plead no facts supporting such a claim, and cite to no contracts or state or federal law imposing a duty on defendants to conduct this sort of remediation. As explained above, under Louisiana law, lessees have a duty to restore property to its original condition, minus normal wear and tear, at the conclusion of the lease, and to refrain from using the property unreasonably or excessively during the pendency of the lease. But plaintiffs have alleged no facts plausibly suggesting that defendants, or defendants' predecessors in interest, engaged in activities that caused land loss or subsidence during the term of the lease in question. Indeed, plaintiffs have failed to plausibly allege that land loss

---

[75]    *Id.* at 65.

or subsidence even *occurred* during the term of the lease. Accordingly, this claim is deficient and must be dismissed.

### 8.  *Tort Claims*

Plaintiffs have alleged that defendants committed negligence under Louisiana Civil Code article 2315, a continuing tort under Louisiana law, and a violation of § 324A of the Restatement (Second) of Torts, as interpreted by Louisiana jurisprudence. Plaintiffs also claim that defendants are liable for punitive damages for their tortious conduct under former article 2315.3 of the Civil Code. Anadarko and BP have moved to dismiss all of these claims, and the remaining defendants have moved to dismiss plaintiffs' claims for a continuing tort and for punitive damages.[76]

### a.  *Negligence Under Article 2315*

As noted above, plaintiffs concede that the complaint does not plausibly allege that Anadarko or BP engaged in any affirmative conduct on the property in question.[77] Neither entity is listed in the Operator History of the property, and plaintiffs have not alleged facts suggesting that Anadarko or BP engaged in

---

[76]     As noted above, Anadarko and BP moved to dismiss all of plaintiffs' claims against them based on the argument that the complaint alleges no individual conduct as to Anadarko or BP. Chevron, Hilcorp, and French have not moved to dismiss plaintiffs' claims for negligence or for a violation of section 324A of the Restatement.

[77]     *See* R. Doc. 63-1 at 2; R. Doc. 72 at 3.

35

any oil and gas exploration or production activities there. Plaintiffs allege only that Anadarko and BP have *failed to restore* property that they leased from plaintiffs to its original condition. For the following reasons, this allegation is insufficient to support a tort claim under article 2315.

"Louisiana courts recognize that the same acts or omissions may constitute breaches of both general duties and contractual duties, giving rise to actions in both tort and contract." *Huggs, Inc. v. LPC Energy, Inc.*, 889 F.2d 649, 655 (5th Cir. 1989); *see also W&T Offshore, Inc. v. Apache Corp.*, 918 F. Supp. 2d 601, 614-15 (S.D. Tex. 2013); *Clean Harbors Envtl. Servs., Inc. v. R&R Const. Servs., Inc.*, Civil Action No. 10-3224, 2011 WL 5509035, at *4 (E.D. La. Oct. 12, 2011); *Strahan v. Sabine Retirement & Rehabilitation Ctr., Inc.*, 981 So. 2d 287, 292 (La. Ct. App. 2008). In determining whether a breach of contract can also give rise to a tort claim, a court must decide whether the breach was passive or active. *See Huggs*, 889 F.2d at 655; *Strahan*, 981 So. 2d at 292.

> Generally, where a person neglects to do what he is obligated under a contract, he has committed a passive breach of the contract. If he negligently performs a contractual obligation, he has committed active negligence and thus an active breach of the contract. A passive breach of contract warrants only an action for breach of contract; an active breach of contract, on the other hand, will also support an action in tort under La. Civ. Code art. 2315.

*Huggs*, 889 F.2d at 655.

Here, plaintiffs have not alleged that Anadarko and BP negligently performed their contractual obligations as lessees to the property, because they have not alleged that Anadarko or BP operated on the property or otherwise performed any obligations at all. Instead, they have alleged that Anadarko and BP failed to perform their obligation to restore property under the Civil and Mineral Codes. That alleged breach of contract is passive, not active, and accordingly plaintiffs' tort claim against Anadarko and BP fails. *See id.*

b.   *Continuing Tort Claim*

Defendants contend that plaintiffs have not adequately pled a continuing tort claim because the operating cause of the alleged injury is not continuous. They note that plaintiffs do not allege that oil and gas exploration and production operations are ongoing on their property. Indeed, any such allegation would be belied by the property's Operator History, which reflects that the last well operated on the property was plugged and abandoned nearly thirty years ago. Instead, plaintiffs allege that "[t]he pollution caused by defendants continues to migrate," and argue that "the continuing failure of defendants to remove their pollution from the property" constitutes a continuing tort.[78] In their opposition, plaintiffs contend that, if any unlined earthen

---

[78]   *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 54.

pits of waste remain open on their property, the existence of such open pits constitutes a continuing tort under the Louisiana Supreme Court's decision in *Marin*.[79]

Defendants have the better of this argument. Under Louisiana law, in order to determine whether injurious conduct constitutes a continuing tort, "the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." *Marin*, 48 So. 3d at 253 (quoting *Hogg v. Chevron USA Inc.*, 45 So. 3d 991, 1003 (La. 2010)). "A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Crump v. Sabine River Auth.*, 737 So. 2d 720, 728 (La. 1999). Thus, "continued migration" of pollution already deposited onto property does not constitute a continuing tort, because it "is the continuation of the harm caused by the previous, but terminated conduct, and falls under the category of 'progressively worsening damages,' not damage-causing conduct." *Marin*, 48 So. 3d at 254; *see also Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 519 (5th Cir. 2009) (failure to clean up oilfield waste does not constitute "a continuing physical invasion under Louisiana law").

---

[79]    R. Doc. 76 at 30.

In *Marin*, the Louisiana Supreme Court found that "the deposit and storage of oilfield wastes into unlined pits" constituted a continuous operating cause that "terminated when the pits were closed." *Id.* at 255. Seizing on this language, plaintiffs argue that defendants' ongoing failure to close the pits on their property constitutes a continuing tort.

Plaintiffs' interpretation of *Marin* does not withstand scrutiny. In *Marin*, the defendant ceased using the pits and closed them at virtually the same time. *See id.* at 247. The court used the point of closure of the pits as a convenient marker for the point at which the tortious conduct ceased; it did *not* hold that merely leaving oilfield waste in pits, without more, constitutes a continuing tort. To the contrary, *Marin* explicitly reaffirmed that "the breach of a duty to right an initial wrong simply cannot be a continuing wrong that suspends the running of prescription, as that is the purpose of every lawsuit and the obligation of every tortfeasor." *Id.* at 254 (quoting *Hogg*, 45 So. 3d at 1007). Thus, the case is most naturally read to hold that a defendant's tortious conduct continues so long as it *actively deposits and stores* waste on the plaintiffs' property. Once the defendant stops actively polluting the property, the tort ceases. Any subsequent inaction is not tortious, but simply a failure to remediate harm previously caused. *See Sweet Lake Land & Oil Co. v. Exxon Mobil Corp.*, No. 2:09-CV-1100, 2011 WL 4591084, at *3

(W.D. La. Sep. 29, 2011) (adopting a similar interpretation of *Marin*); *cf. Kling Realty*, 575 F.3d at 519.

Plaintiffs do not allege that defendants are still actively conducting oil and gas exploration or production activities on their property, or actively depositing waste into unlined earthen pits. Accordingly, the Court finds that plaintiffs have failed to state a claim for a continuing tort.

### c.   Restatement § 324A

Louisiana courts recognize the common law doctrine codified in the Restatement (Second) of Torts § 324A. That section provides that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [perform] his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Bujol v. Entergy Servs., Inc.*, 922 So. 2d 1113, 1128 (La. 2004).

Plaintiffs have not alleged that Anadarko or BP "undert[ook] . . . to render services" to them; indeed, as noted above, plaintiffs have failed to allege that those defendants engaged in any conduct on the subject property at all. Accordingly, the Court dismisses this claim against Anadarko and BP.

d.   *Punitive Damages Under Former Article 2315.3*

Former article 2315.3 of the Louisiana Civil Code provided that, "[i]n addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." *See Corbello v. Ia. Prod.*, 850 So. 2d 686, 707 (La. 2003). "Damages under 2315.3 are recoverable on a derivative basis where a plaintiff is entitled to recover tort damages." *Id.* The provision was in effect between 1984 and 1996, and applies to causes of action arising during that time period. *See id.* at 707 n.9; *Brownell Land Co. v. Apache Corp.*, No. Civ.A. 05-322, 2005 WL 3543772, at *6 (E.D. La. Oct. 13, 2005).

The law is clear that "in order to state a cause of action for exemplary damages, the plaintiff must plead facts which establish the[] cause of action during the effective period of article 2315.3." *In re Harvey Term Litig.*, 872 So.2d 584, 586 (La. Ct. App. 1994); *accord Apache Corp.*, 2005 WL 3543773, at *6; *see also Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp.*, No. 2:09 CV 1100, 2012 WL 27475, at *2 (W.D. La. Jan. 3, 2012). Plaintiffs have failed to do so here. They have broadly alleged that defendants' conduct "egregiously violat[ed] applicable health and safety regulations and applicable field-wide orders" and "constitute[d] wanton or reckless disregard for public safety

41

in the storage, handling or transportation of hazardous or toxic substances."[80] But plaintiffs have alleged no facts plausibly suggesting that specific instances of such conduct occurred between 1984 and 1996, when article 2315.3 was operative. In fact, the Operator History of plaintiffs' property indicates that no named defendant (or predecessor in interest of any named defendant) conducted oil and gas exploration and production activities on the property after 1982.[81] Accordingly, plaintiffs' claim for punitive damages must fail. *See Guthrie v. Plains Res. Inc.*, No. 2:12 CV-1904, 2013 WL 2471670, at *11 (W.D. La. June 7, 2013) (dismissing punitive damages claims based on drilling in oil wells that were plugged and abandoned before the enactment of article 2315.3); *Apache Corp.*, 2005 WL 3543772, at *6 (dismissing punitive damages claims because the plaintiff had not pled facts suggesting that "the alleged contamination occurred on the plaintiff's property during the effective period of the statute or that defendant knew of such contamination during such time period").

Plaintiffs argue that Chevron's "failure to remove the hazardous substances wrongfully deposited on the plaintiffs'

---

[80]    *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 58.

[81]    *Id.* at 32-33. As noted above, two of the wells in question were not plugged and abandoned until 1986. *Id.* at 32. But Tennecco -- which is not named as a defendant in this case -- took over operation of both of those wells in 1982. *Id.*

land" and "failure to warn the plaintiffs of the danger" between 1984 and 1996 could give rise to liability for punitive damages under former article 2315.3.[82] This is incorrect. The Court has already held that Chevron's alleged failure to remediate pollution already deposited on plaintiffs' property is not ongoing tortious conduct, and plaintiffs can recover punitive damages only on a "derivative basis" after showing that the defendant committed a tort. *Corbello*, 850 So. 2d at 707. *Grefer v. Alpha Technical*, 901 So. 2d 1117 (La. Ct. App. 2005), cited by plaintiffs in their opposition, is not to the contrary. There, the court held that the jury was entitled to find Exxon liable for punitive damages because Exxon had actively shipped "NORM-contaminated oilfield tubing" to another company during the time article 2315.3 was in force. *Id.* at 1144. Here, in contrast, plaintiffs have not plausibly alleged that Chevron (or any other defendant) engaged in tortious conduct resulting in contamination between 1984 and 1996.

Plaintiff's "failure to warn" argument also fails. First, plaintiff has cited no authority for the proposition that former article 2315.3, which imposed liability for the "wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances," encompasses failure to warn claims if the defendant's acts of storing,

---

[82]    R. Doc. 76 at 18.

handling, or transporting the substances did not occur during the period that former article 2315.3 was in effect.

Second, the Louisiana courts to have considered the issue have held that "the continuing tort theory simply cannot apply in failure to warn cases." *GHR Energy Corp. v. Carboline Co.*, 744 F. Supp. 1405, 1407 (E.D. La. 1990); *accord Hoskins v. United States*, No. CIV.A. 00-173, 2001 WL 175237, at *2 (E.D. La. Feb. 20, 2001); *Castano v. Am. Tobacco Co.*, 870 F. Supp. 1425, 1436 (E.D. La. 1994). Again, plaintiffs can recover punitive damages under former article 2315.3 only on a "derivative basis" after showing that the defendant committed a tort. *Corbello*, 850 So. 2d at 707. Defendant's continuing failure to warn plaintiffs cannot give rise to punitive liability because such conduct is not a continuing tort.

### 9. *Trespass Claim*

#### a. *Continuing Trespass*

Plaintiffs' claim for a continuing trespass fails for the same reason as did their claim for a continuing tort: the alleged operating cause of the injury is not continuous, but rather terminated in the past. *See Hogg*, 45 So. 3d at 1003-04 (because trespass is a species of tort, "[t]o determine whether a trespass is continuous, a court must engage in the same inquiry used to determine the existence of a continuing tort" and determine

44

whether the operating cause of the injury is continuous or
discontinuous); *see also Marin*, 48 So. 3d at 253.

      b.   *Trespass Based on Actions Outside the Scope of the
           Lease*

In plaintiffs' opposition, they appear to abandon their
theory of continuing trespass and instead argue that defendants
committed a trespass by "operating on the property outside the
confines of their lease rights."[83]

This claim cannot succeed against Anadarko, BP, Hilcorp, or
French, because plaintiffs have not plausibly alleged that those
defendants operated on the property at all. But plaintiffs have
plausibly alleged a trespass against Chevron. The complaint
alleges that Chevron, through its predecessors in interest, was
granted an oil and gas lease on plaintiffs' property, but then
violated its implied obligations under that lease by polluting
and severely damaging the property. Thus, plaintiffs have
plausibly alleged that Chevron operated outside the scope of the
applicable lease, which constitutes a trespass under Louisiana
law. *See Vermilion Parish Sch. Bd. v. BHP Billiton Petroleum
(Ams.) Inc.*, No. Civ. A. 04-2069, 2005 WL 2406157, at *7 (W.D.
La. Sep. 29, 2005); *cf. Gaspard v. St. Martin Parish Sewerage
Dist. #1*, 569 So. 2d 1083, 1084 (La. Ct. App. 1990).

---

    [83]    R. Doc. 76 at 40.

c.  *Civil Fruits*

Plaintiffs allege that defendants "derived substantial economic benefits" from their storage of hazardous waste on plaintiffs' property, because that storage allowed defendants "to avoid the substantial costs and expenses associated with the proper disposal of this toxic pollution and waste."[84] Based on this allegation, plaintiffs claim that they are entitled to civil fruits of defendants' trespass under Civil Code article 486, which provides that "[a] possessor in bad faith is bound to restore to the owner the fruits he has gathered, or their value, subject to his claim for reimbursement of expenses."

Plaintiffs cannot state a claim for civil fruits of trespass against Anadarko, BP, Hilcorp, or French because the Court found above that none of those defendants trespassed on plaintiffs' property. Plaintiffs do, however, have a viable trespass claim against Chevron, and so the Court must determine whether the "economic benefits" Chevron allegedly derived from its storage of oilfield wastes on plaintiffs' property constitute "fruits" within the meaning of Civil Code article 486.

Civil Code article 551 defines fruits as "things that are produced by or derived from another thing without diminution of its substance," and civil fruits as "revenues derived from another thing, such as rentals, interest, and certain corporate

---

[84]  *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 59.

46

distributions." The Louisiana Court of Appeal for the Second
Circuit has held that economic benefits derived from storage of
wastes on a plaintiff's property without permission are not
"civil fruits" as defined in the Civil Code because nothing is
"produced by or derived from the property as a result of the
storage/disposal of the waste," and there are "no revenues, such
as rentals, interest or a corporate distribution, derived from
the property by virtue of the storage/disposal of the waste."
*Wagoner v. Chevron USA Inc.*, 55 So. 3d 12, 27 (La. Ct. App.
2010).

The Court finds the analysis in *Wagoner* persuasive. Chevron
may have avoided costs by improperly storing waste on plaintiffs'
property, but avoiding costs is not the same as earning revenues.
Accordingly, the Court holds that plaintiffs have not stated a
claim for civil fruits against Chevron.

The cases on which plaintiffs rely in arguing to the
contrary are distinguishable. In *Corbello*, the Louisiana Supreme
Court affirmed the lower court's decision to award the plaintiff
the "*profits* earned by [the defendant] during the time [the
defendant] remained on the property in bad faith, without a lease
and over the objection of plaintiffs." 850 So. 2d at 709
(emphasis added). Similarly, in *Rosenthal-Brown Fur Co. v. Jones-
Frere Fur Co.*, 110 So. 630 (1926), the court held that the
plaintiffs were entitled to recover the *profits* that defendants
earned by unlawfully trapping animals on plaintiffs' land. *Id.* at

47

632-33. Here, in contrast, plaintiffs are not seeking profits earned by defendants (which would be considered "fruits" under the definition of article 551), but rather costs avoided by defendants.

Finally, the court in *Mongrue v. Monsanto Co.*, No. CIV. A. 98-2531, 1999 WL 970354 (E.D. La. Oct. 21, 1999), merely stated that the plaintiffs could recover damages to compensate them for the "depriv[ation] of the opportunity to use or lease their underground storage space" caused by the defendant's trespass. *Id.* at *4. The plaintiffs in *Mongrue* did not request that the defendant disgorge "civil fruits"; indeed, the opinion does not even mention that legal doctrine. Rather, the *Mongrue* plaintiffs sought reimbursement for actual damages that they suffered as a result of the defendants' trespass.

### 10.  *Claims Under Article 667*

Plaintiffs also allege that defendants have violated Louisiana Civil Code article 667. They contend that defendants are strictly liable to them for damages stemming from violations of article 667 that occurred before April 16, 1996. Plaintiffs argue in their brief that a strict liability standard is appropriate for pre-1996 conduct because defendants engaged in ultrahazardous activity on plaintiffs' property.[85] Plaintiffs

---

[85]    R. Doc. 76 at 36.

also allege that defendants are liable under the post-1996 version of article 667.

Before the 1996 amendments to the Civil Code, article 667 provided as follows: "Although a proprietor may do with his estate what he please, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him." Louisiana courts interpreted article 667 to impose strict liability -- that is, liability without fault -- on defendants for damage caused by an activity deemed "ultrahazardous." *Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 683 So. 2d 1319, 1321 (La. Ct. App. 1996).

In 1996, the legislature "amended article 667 to require a showing of negligence in any claim for damages under article 667 other than those caused by 'pile driving' or 'blasting with explosives.'" *Vekic v. Wood Energy Corp.*, No. Civ.A. 03-1906, 2004 WL 2367732, at *4 (E.D. La. Oct. 20, 2004); *accord Yokum v. 615 Bourbon Street, L.L.C.*, 977 So. 2d 859, 874 (La. 2008). Article 667 now provides as follows:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. . . .

Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

The Court finds that plaintiffs have not plausibly alleged that Anadarko, BP, Hilcorp, or French violated the duties imposed by article 667. As noted above, plaintiffs have not alleged that any of those defendants engaged in *any* "work" on the property in question, much less "work" that could be considered unlawful under either the former or current version of article 667. Moreover, plaintiffs' claim against Chevron for continuing nuisance under article 667 fails for the same reason as their continuing tort claims. *See Hogg*, 45 So. 3d at 1003 (equating the concepts of continuing tort, continuing trespass, and continuing nuisance). The facts alleged in the complaint do not plausibly suggest that there is an *ongoing* nuisance causing harm to plaintiffs' property.

The Court now considers Chevron's liability to plaintiffs for violations of article 667 that occurred in the past.

a.   *Liability For Damages Incurred Before 1996*

The seminal case interpreting former article 667 in the context of entities holding coexisting rights to the same piece of property is *Inabnet v. Exxon Corp.*, 642 So. 2d 1243 (La. 1994). The *Inabnet* court noted that article 667 "place[d] limitations on the rights of owners by setting out principles of

50

responsibility applying the doctrine of *sic utere tuum ut alienum non laedas*, which requires an owner to use his property in such a manner as not to injure another." *Id.* at 1250-51 (citing 4 A.N. Yiannapoulos, *Louisiana Civil Law Treatise, Predial Servitudes* §§ 25, 33 (1983)). More specifically, this codal provision "prohibit[ed] uses which cause damage to neighbors or deprive them of the enjoyment of their property." *Inabnet*, 642 So. 2d at 1251.

Conduct by a "neighbor" that violated the duties imposed by former article 667 could "give rise to delictual liability, without negligence, as a species of fault within the meaning of La. Civ. Code art. 2315." *Id.* at 1251; *see also Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 608 (E.D. La. 2006) ("A violation of Louisiana Civil Code article 667 constitutes fault within the meaning of Louisiana Civil Code article 2315."). The Louisiana Supreme Court consistently held that individuals holding coexisting rights in the same piece of property could "be neighbors within the contemplation of Article 667." *Inabnet*, 642 So. 2d at 1252 (citing *Butler v. Baber*, 529 So. 2d 374 (La. 1988)); *see also Magnolia Coal Terminal v. Phillips Oil Co.*, 576 So. 2d 475, 484 (La. 1991); *Butler*, 529 So. 2d at 381. But,

> in cases involving damages caused to one holder of a right to immovable property by another holder of a right to the same property, the court in determining "fault" under Article 2315 must consider not only Articles 667-669, but also all other applicable codal and statutory rules and legal principles and other pertinent considerations.

51

*Inabnet*, 642 So. 2d at 1252. These "pertinent considerations"
included

> the temporal order of the leases or other rights, the
> nature of the rights, the type of activities normally
> incidental to the use for which the rights were granted,
> the damage-causing party's knowledge of the existence of
> the damaged party's rights, the availability of
> alternative methods of exercising the right so as to
> cause little or no damage, and others.

*Id.* In other words, when two entities had coexisting rights to
the same piece of property, the standards imposed by former
article 667 were not the only considerations in determining
whether one entity breached the obligation of neighborhood set
forth in that provision. The court was also required to analyze
the relationship of the parties, the nature of their rights to
the property, whether the defendant breached any duties flowing
from the relationship, and the applicability *vel non* of other
provisions of the Civil or Mineral Codes. *See Inabnet*, 642 So. 2d
at 1252-53.

   *Inabnet* provides a helpful example of this principle. There,
the Court determined that the defendant, Exxon, which held a
surface lease in property on which plaintiff had acquired an
oyster lease, was not liable to the plaintiff under article 667
for the plaintiff's inability to produce oysters. The Court
explained that Exxon had acquired a right to install and operate
a tank battery on the property ten years before the plaintiff
acquired his oyster lease. *Id.* at 1253. Thus, the nature of
Exxon's right "precluded oyster production on the same property

52

and made [the property] unavailable for plaintiff's use under his lease." *Id.* at 1253.

Applying the foregoing principles to this case, the Court finds that (1) plaintiffs have stated a delictual claim against Chevron under article 2315 for a violation of the duties imposed by former article 667, but (2) strict liability, as traditionally understood, is not the appropriate standard for that claim.

Plaintiffs have stated a delictual claim based on former article 667 against Chevron arising out of the "work" Chevron allegedly performed on their land. *Cf. Yokum*, 977 So. 2d at 875 ("[T]he 'work' to which Article 667 refers includes not only constructions but also activities that may cause damage."). The complaint alleges that Chevron's conduct "deprive[d] [plaintiffs] of the liberty of enjoying" their land by causing damage to it and also violated certain implied obligations owed by mineral lessees under Louisiana statutory law. Accordingly, plaintiffs have also plausibly alleged that Chevron has breached its duty under former article 667 to refrain from damaging its neighbors. *See Magnolia Coal*, 576 So. 2d at 484 (mineral lessees liable to lessor under article 667 for "exercis[ing] their contractual rights as mineral lessees with an unreasonable disregard for the damage" thereby inflicted on the land).

But, even assuming that Chevron's alleged conduct constitutes "ultrahazardous activity" within the meaning of the pre-1996 jurisprudence regarding former article 667, traditional

53

strict liability is not the standard applicable to that conduct. *Inabnet* made clear that, when a court is faced with claims under former article 667 between entities with co-existing rights to the same piece of property, the court must consider more than whether one co-owner engaged in conduct on the property that caused the other co-owner to suffer damage. The *Inabnet* Court was explicit on this point: It held that an earlier decision "hinging liability of a mineral lessee to an oyster lessee of the same property on proof of causation and damages" was too simplistic, insofar as it failed to take into account other essential considerations. Those considerations, as noted earlier, include

> the temporal order of the leases or other rights, the nature of the rights, the type of activities normally incidental to the use for which the rights were granted, the damage-causing party's knowledge of the existence of the damaged party's rights, the availability of alternative methods of exercising the right so as to cause little or no damage, and others.

*Inabnet*, 642 So. 2d at 1252. Accordingly, no liability can be imposed under former article 667 without consideration of the totality of these factors.

### b.   *Liability For Damages Incurred After 1996*

Clearly, plaintiffs do not have a claim against Chevron for strict liability under article 667 for damages incurred after 1996, because they have not alleged that Chevron engaged in pile driving or blasting with explosives. *See Yokum*, 977 So. 2d at 874 (1996 amendments to article 667 "shift[ed] the absolute liability

standard to a negligence standard" for all activities except pile driving and blasting with explosives). Instead, plaintiffs must show that Chevron's actions were negligent. *See id.* But, as noted above, *see supra* Section III.B.5.b, plaintiffs have plausibly alleged that Chevron's predecessors in interest negligently conducted oil and gas exploration and production activities on plaintiff's land and improperly stored the resulting waste, thereby causing harm to the property. Accordingly, plaintiffs' claim for damages against Chevron for post-1996 violations of current article 667 may go forward.

    c.   *Summary*

    In summary, plaintiffs have plausibly alleged a delictual claim against Chevron, but no other defendant, for violating the duties imposed by article 667. In order to ultimately prevail on that claim, plaintiffs must show fault according to the principles set forth in *Inabnet* (for conduct occurring before 1996) or negligence (for conduct occurring after 1996).

    11.  *Premises Liability Claims*

    Plaintiffs have brought claims under Civil Code articles 2317 and 2322, which set forth Louisiana law on premises liability. Article 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." Before 1996, custodians

55

were strictly liable for injuries caused by things in their custody. Accordingly, to recover under article 2317, a plaintiff had to establish three elements: "(1) the thing causing his damage was in the custody of the defendant; (2) the thing had a 'defect' or a condition creating an unreasonable risk of harm; and (3) the defective condition caused plaintiff's injuries." *Hebert v. Sw. La. Elec. Membership Corp.*, 667 So. 2d 1148, 1157 (La. Ct. App. 1995) (citing *Oster v. Dep't of Transp. & Dev.*, 582 So. 2d 1285 (La. 1991)). In 1996, the Louisiana legislature amended the Civil Code to impose a negligence standard. *Coulter v. Texaco Inc.*, 117 F.3d 909, 913 & n.8 (5th Cir. 1997). Today, in order to prevail on a custodial liability claim under article 2317, a plaintiff must prove a fourth element as well: that "the defendant knew or should have known of the defect" that caused the plaintiff's injuries. *Cormier v. Dolgencorp, Inc.*, 136 F. App'x 627, 627-28 (5th Cir. 2005) (citing La. Civ. Code. arts. 2317, 2317.1).

Article 2322 applies specifically to buildings, and provides as follows:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

56

A plaintiff must plead the following elements to state a claim under article 2322: "(1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation." *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 182-83 (La. 2013). Like article 2317, article 2322 imposed liability without fault before the 1996 revisions to the Civil Code. *See Celestine v. Union Oil Co.*, 652 So. 2d 1299, 1303 (La. 1995).

Plaintiffs allege that "[a]t all pertinent times hereto, defendants had *garde* of the facilities and equipment that caused the pollution described herein."[86] But plaintiffs have not alleged any facts suggesting that those facilities or equipment contained a "defect" or "ruin" that posed an unreasonable risk of harm. Allegations that the defendants had custody of facilities and that the facilities caused harm in the form of pollution are not enough; the harm must be the result of a defective condition in order for a claim under article 2317 or article 2322 to lie. *See Cormier*, 136 F. App'x at 627-28; *Broussard*, 113 So. 3d at 182-83. Accordingly, plaintiffs' premises liability claims may not go forward.

---

[86]     *Alford et al. v. Anadarko E&P Onshore, LLC et al.*, No. 2:13-cv-05703, R. Doc. 1-3 at 55.

*12.  Unjust Enrichment Claim*

Louisiana Civil Code article 2298 is Louisiana's unjust

enrichment statute. It provides as follows:

> A person who has been enriched without cause at the
> expense of another person is bound to compensate that
> person. The term "without cause" is used in this context
> to exclude cases in which the enrichment results from a
> valid juridical act or the law. The remedy declared here
> is subsidiary and shall not be available if the law
> provides another remedy for the impoverishment or
> declares a contrary rule.

La. Civ. Code art. 2298. Louisiana courts have interpreted the

provision to require a five-part showing in order to recover:

> (1) [T]here must be an enrichment, (2) there must be an
> impoverishment, (3) there must be a connection between
> the enrichment and resulting impoverishment, (4) there
> must be an absence of "justification" or "cause" for the
> enrichment and impoverishment, and finally (5) the
> action will only be allowed when there is no other
> remedy at law, i.e., the action is subsidiary or
> corrective in nature.

*Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 346 (5th Cir.

2009) (quoting *Minyard v. Curtis Prods., Inc.*, 205 So. 2d 422,

432 (La. 1968)).

Plaintiffs rightfully concede that their claim for unjust

enrichment is not viable because they have available remedies at

law. "[U]njust enrichment is a remedy of 'last resort' and is

only available to fill a gap in the law." *Port of S. La. v. Tri-

Parish Indus., Inc.*, 927 F. Supp. 2d 332, 341 (E.D. La. 2013).

Thus, if a plaintiff pleads a legal cause of action in his

complaint, he may not also assert a claim for unjust enrichment,

58

because the latter is precluded by the availability of the former. *Id.* (citing *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 245, 246 (La. 2010)); *Gallant Invs. Ltd. v. Ill. Cent. R.R. Co.*, 7 So. 3d 12, 18 (La. Ct. App. 2009)). Accordingly, the Court dismisses plaintiffs' claims for unjust enrichment.

## IV.  LEAVE TO AMEND

Courts should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013). Accordingly, the Court will grant plaintiffs' request for an opportunity to amend their complaint.

## V.  CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motions for a more definite statement and GRANTS IN PART and DENIES IN PART the motions to dismiss filed by Anadarko, BP, Chevron, Hilcorp, and French. The Court dismisses without prejudice all of plaintiffs' claims against Anadarko and BP except their claims under Civil Code articles 2683(2), 2686, and 2692, and Mineral Code articles 11 and 122. The Court dismisses without prejudice the following claims against Chevron:

- Fraudulent concealment claim
- Claim for restoration under La. Civ. Code art. 2683(3)
- Claim for breach of an express contractual provision
- Claim under La. Civ. Code art. 2683(1)
- Claim under La. Civ. Code art. 2688

- Claims for breach of implied obligations owed by mineral servitude holders under La. Civ. Code arts. 576 and 577 and La. Rev. Stat. §§ 31:11 and 31:22
- Claims for land loss, subsidence, and backfilling of canal
- Continuing tort claim
- Claim for punitive damages
- Claim for continuing trespass
- Claim for civil fruits under La. Civ. Code art. 486
- Claims for continuing nuisance and for strict liability under La. Civ. Code. art. 667
- Premises liability claims under La. Civ. Code. arts. 2317 and 2322
- Unjust enrichment claim

Finally, the Court dismisses without prejudice the following claims against Hilcorp and French:

- Fraudulent concealment claim
- Claim for restoration under La. Civ. Code art. 2683(3)
- Claim for breach of express contractual provision
- Claim under La. Civ. Code art. 2683(1)
- Claim under La. Civ. Code art. 2688
- Claims for breach of implied obligations owed by mineral servitude holders under La. Civ. Code arts. 576 and 577 and La. Rev. Stat. §§ 31:11 and 31:22
- Claim for land loss, subsidence, and backfilling of canals
- Continuing tort claim
- Claim for punitive damages
- Claim for trespass and continuing trespass
- Claim for civil fruits under La. Civ. Code art. 486
- Claims under La. Civ. Code. art. 667
- Premises liability claims under La. Civ. Code. arts. 2317 and 2322
- Unjust enrichment claim

Plaintiffs will be allowed twenty-one (21) days from the date of this order to amend their complaint. Failure to timely amend the complaint will result in dismissal of the foregoing claims with prejudice.

New Orleans, Louisiana, this 22nd day of April, 2014.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE