```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
```

CATHERINE P. ALFORD, ET AL.                   CIVIL ACTION

VERSUS                                        NO: 13-5457
                                              REF: 13-5464

CHEVRON U.S.A. INC., ET AL.                   SECTION: R


## ORDER AND REASONS

Defendant Exxon Mobil Corporation moves the Court to reconsider a portion of its April 1, 2014 Order and Reasons granting in part and denying in part defendants' motions to dismiss.[1] Because the Court finds that the 1960 Servitude Agreement in this case is not a "mineral servitude" as that term is defined in the Louisiana Mineral Code, the Court GRANTS Exxon's motion.

## I.   BACKGROUND

Plaintiffs filed this lawsuit in Louisiana state court on May 2, 2013, alleging that defendants engaged in oil and gas exploration and production activities that caused severe damage to property that plaintiffs own in Placquemines Parish.[2] Plaintiffs alleged that defendants were liable for that harm under multiple provisions of the Louisiana Civil and Mineral Codes. The factual

---

[1]   R. Doc. 162.

[2]   *Alford et al. v. Chevron U.S.A. et al.*, No. 2:13-cv-5464, R. Doc. 1-3 at 24-25.

and procedural history of this suit is set forth in detail in the Court's April 1 Order.[3] Accordingly, here, the Court will relate only the background necessary to provide context for the motion under consideration.

In its ruling on defendants' motions to dismiss, the Court held that plaintiffs had plausibly alleged that Exxon violated its implied obligations as a servitude holder under articles 576 and 577 of the Louisiana Civil Code and articles 11 and 22 of the Louisiana Mineral Code.[4] The Court reasoned that plaintiffs had attached to their complaint "a document showing that Humble Oil [Exxon's predecessor in interest] was granted a mineral servitude on plaintiffs' property on February 17, 1960," and had plausibly alleged that Exxon breached its obligations as a servitude holder by "negligently construct[ing] and operating[ing] oil and gas exploration and production facilities and negligently discard[ing] resulting waste."[5] Exxon now argues that articles 11 and 22 of the Mineral Code do not impose any obligations on Exxon by virtue of the 1960 agreement because that agreement is not a "mineral servitude" within the meaning of the Louisiana Mineral Code.

---

[3]   R. Doc. 161 at 2-8.

[4]   *Id.* at 29-32.

[5]   *Id.* at 31-32.

**II.   LEGAL STANDARD**

Exxon styled its motion as a "motion for reconsideration" of that portion of the Court's April 1 order denying Exxon's motion to dismiss plaintiffs' claims under Mineral Code articles 11 and 22. Exxon seeks relief under Federal Rule of Civil Procedure 59(e), which provides that a party may file a "motion to alter or amend a judgment . . . no later than 28 days after the entry of judgment." But an order denying a motion to dismiss is not a "judgment" within the meaning of the Federal Rules. *Carter v. Coody*, 297 F. App'x 317, 319 (5th Cir. 2008) ("An order denying a motion to dismiss or for summary judgment is not a final order or judgment."); *see also* Fed. R. Civ. P. 54(a) (defining "judgment" as "includ[ing] a decree and any order from which an appeal lies"); Black's Law Dictionary 918 (9th ed. 2009) (defining "judgment" as "[a] court's final determination of the rights and obligations of the parties in a case"). Accordingly, Rule 59 is not applicable here. The Court will consider Exxon's motion pursuant to Rule 60, under which the court may relieve a party from an "order." *See Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999) (motion styled as a motion for reconsideration must be considered under Rule 60, not Rule 59, if it is "directed [not] to a final judgment, but rather to a nonfinal order").

Under Rule 60, the Court may relieve a party from a "final judgment, order, or proceeding" for one of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). In deciding a Rule 60(b) motion, the Court must "balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005). The Fifth Circuit has cautioned that relief under Rule 60(b) is an "extraordinary remedy," because the "desire for a judicial process that is predictable mandates caution in reopening judgments." *In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005) (quoting *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir. 1998)). A motion for reconsideration is generally not an appropriate vehicle for advancing new arguments or supporting facts that were available at the time of the original motion. *Williams v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 470 F. App'x 309, 313 (5th Cir. 2012); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *cf. Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) ("Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or

4

must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986))); Charles Allen Wright, *et al.*, Federal Practice and Procedure § 2810.1 n.22 (3d ed. 2009) (same) (collecting cases).

**III. DISCUSSION**

In support of its motion for reconsideration, Exxon contends that the 1960 servitude agreement is not a *mineral* servitude, and hence that plaintiffs cannot state a claim under either article 11 or article 22 of the Mineral Code based on that agreement. Exxon did not raise this argument in its initial motion to dismiss or in its reply to plaintiff's opposition to that motion. In its original motion to dismiss, Exxon simply adopted the arguments set forth by Chevron.[6] Chevron had argued that Mineral Code Articles 11 and 22 applied only to mineral servitude owners, not to mineral lessees, and that plaintiffs had failed to allege that Chevron was a servitude owner.[7] Neither party mentioned the issue of servitudes in its reply brief. Exxon also failed to raise this argument in its recently-filed motion to dismiss that was submitted for hearing on

---

[6]   R. Doc. 47-2 at 8.

[7]   R. Doc. 25-1 at 30. Although Exxon adopted Chevron's arguments on this subject, the Court notes that Exxon could not plausibly argue that it was not a servitude owner at all. The 1960 agreement clearly conveys a servitude of some sort.

May 21, 2012.[8] As noted above, a motion for reconsideration is generally not an appropriate vehicle for new arguments that could have been raised earlier.

Nonetheless, under Fifth Circuit law interpreting Rule 60(b), the Court may entertain a motion for reconsideration containing new arguments if it determines that those arguments have merit. *See Oliver v. Home Indem. Co.*, 470 F.2d 329, 330-31 (5th Cir. 1972); *see also Santa Fe Snyder Corp. v. Norton*, 385 F.3d 884, 887 (5th Cir. 2004) (noting that a court may grant a motion for reconsideration under Rule 60(b)(1) if the Court's original order contains a "mistake"); *Barrier v. Beaver*, 712 F.2d 231, 233-35 (6th Cir. 1983); Wright, *et al.*, *supra*, § 2858.1. More specifically, a district court may grant relief under Rule 60(b)(1) if the aggrieved party raises a new point of law that "is determinative on the question before" the Court. *Barrier*, 712 F.2d at 235. Such an approach is justified because it "prevent[s] the unnecessary wasting of energies by . . . courts and litigants." *Oliver*, 470 F.2d at 330-31. Here, for the reasons that follow, the Court concludes that Exxon's arguments are correct. Accordingly, in the interest of judicial efficiency, it will exercise its discretion to consider them and to grant relief under Rule 60(b)(1).

The 1960 servitude agreement grants Humble Oil

> servitudes to lay, maintain, operate, replace, change and remove any and all pipe lines for the transportation of

---

[8]   R. Doc. 167.

> oil, gas and/or water and/or their products, with all incidental equipment, on, over, across and through [plaintiffs' property] . . . .
> . . . .
> A servitude to install, maintain, operate, replace, change and remove pipe lines, tanks, tank batteries, compressors, dehydration facilities and appurtenances for the treating, transportation and storage or oil, gas, sulphur, salt water brine and other minerals and other combinations thereof, and/or their products; and to dredge, dig, maintain and use canals together with the right to deposit spoil along side of same; and to build, maintain, use and operate any other facilities and appurtenances useful and convenient to Grantee's general business on, over, across and through [plaintiffs' property] . . . .[9]

The agreement further provides that

> [t]he undersigned owners retain for themselves and their heirs and assigns the right fully to use and enjoy said premises, except as the same may be necessary for the use of the servitudes herein granted.
>     It is distinctly understood that this does not constitute a conveyance of any part of the land above described nor of the minerals therein and thereunder, but grants only the servitude as above provided.[10]

Article 21 of the Louisiana Mineral Code defines a mineral servitude as "the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." La. Rev. Stat. § 31:21. The 1960 agreement does not grant to Humble Oil the right to "explor[e] for and produc[e] minerals and reduc[e] them to possession and ownership"; to the contrary, it explicitly states that the grantee has no ownership interest in the minerals of

---

[9] *Alford et al. v. Chevron U.S.A., et al.*, No. 2:13-cv-5464, R. Doc. 1-3 at 71.

[10] *Id.* at 72.

7

plaintiffs' property. Accordingly, the 1960 agreement is not a "mineral servitude" within the meaning of the Louisiana Mineral Code.

Article 11 of the Mineral Code imposes obligations only on owners of "mineral rights." "The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease." La. Rev. Stat. § 31:16. As explained above, the 1960 agreement is not a mineral servitude. Nor is it a mineral royalty ("the right to participate in production of minerals from land owned by another or land subject to a mineral servitude owned by another," La. Rev Stat. § 31:80), or a mineral lease ("a contract by which the lessee is granted the right to explore for and produce minerals," La. Rev Stat. § 31:114). Instead, the agreement merely granted Humble Oil the right to erect facilities on plaintiffs' property that would allow it to transport certain minerals over the property.[11] Thus, the Court finds that article 11 does not impose any obligations on Exxon by virtue of the 1960 agreement because that agreement did not bestow any "mineral rights" upon Humble Oil.

---

[11] The Court notes that article 16 also provides that its enumeration of mineral rights as including the mineral servitude, mineral royalty, and mineral lease "does not exclude the creation of other mineral rights by a landowner." But plaintiffs have not argued that the servitude agreement in question conveyed a mineral right not enumerated in article 16, and any such argument would likely fail, given that the 1960 agreement did not convey any interest in the actual minerals within plaintiffs' property.

8

Article 22 of the Mineral Code imposes obligations on owners of mineral servitudes. *See* La. Rev. Stat. § 31:22 ("The owner of a mineral servitude . . . is entitled to use only so much of the land as is reasonably necessary to conduct his operations[] and is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time."). Because the 1960 agreement is not a mineral servitude, Article 22 is not applicable to this case. *See Walton v. Burns*, Nos. 47,288-CA, 47,428-CW, 2013 WL 163739, at *10-11 (La. Ct. App. Jan. 16, 2013) (noting that Mineral Code article 22 is applicable only to mineral servitude holders).

Plaintiffs do not appear to dispute either Exxon's premise -- that the 1960 agreement does not convey a mineral right -- or its conclusion -- that neither article 11 nor article 22 applies to this case by virtue of the 1960 agreement. Instead, plaintiffs merely point out that the 1960 agreement is a personal servitude of use (if not a mineral servitude) and that articles 576 and 577 of the Louisiana Civil Code impose certain obligations on the holders of personal servitudes. But this argument is beside the point. The Court has already held that plaintiffs plausibly alleged that defendants violated their obligations as servitude holders under articles 576 and 577,[12] and Exxon has not asked the Court to reconsider that portion of the April 11 Order.

---

[12] *Id.* at 29-32.

**IV. CONCLUSION**

In sum, the Court revises its April 1 Order in one narrow respect: the Court holds that plaintiffs have not plausibly alleged that Exxon violated the implied obligations of mineral servitude holders set forth in Louisiana Mineral Code articles 11 and 22.[13]

New Orleans, Louisiana, this 3rd day of June, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[13] As explained in the April 1 Order, however, plaintiffs have plausibly alleged that Exxon and Chevron violated their duties as *mineral lessees* under article 11. R. Doc. 161 at 26-27.